UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Sue Flaherty, | ) | |
|         Plaintiff | ) | |
| | ) | |
| | ) | Case No. 03-4060 |
| | ) | |
| Illinois Bell Telephone Co., | ) | |
|         Defendant | ) | |

**ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court is the defendant's Motion for Summary Judgment (Doc. #17). The motion is fully briefed and I have carefully considered the arguments of both parties. For the following reasons, the motion is GRANTED in part and DENIED in part.

**SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift

through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999). The existence of "some alleged factual dispute between the parties," or "some metaphysical doubt," however, does not create a genuine issue of fact. Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir.1999). The proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See, e.g., Jordan v. Summers, 205 F.3d 337, 342 (7th Cir.2000).

If the facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995), citing Anderson, 477 U.S. at 248. 1995). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential

to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. Celotex, 477 U.S. at 322; Waldridge, 24 F.3d at 920. Although courts weighing summary judgment motions in employment cases must take special care not to invade the province of the fact finder, employment cases are governed by the same rules that govern any other summary judgment case, and they are equally amenable to summary disposition so long as there is no genuine dispute as to material facts. Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997); Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1031 (7th Cir. 1998).

While intent and credibility are often critical issues in employment discrimination cases, there is no special version of Rule 56 that applies only to them. See, e.g., Alexander v. Wisconsin Dep't of Health and Family Serv., 263 F.3d 673, 681 (7th Cir.2001); Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir.1997); Haugerud v. Amery School Dist., 259 F.3d 678, 689 (7th Cir.2001). Summary judgment is not a substitute for a jury's determination about credibility. Ashton v. City of Indianapolis, No.1562724, *1 -2 (S.D. Ind. 2003).

## UNDISPUTED MATERIAL FACTS

The following recitation of facts is taken from the parties' statements of undisputed material facts and the responses thereto, unless otherwise noted.

Plaintiff Sue Flaherty was employed from December 1979 until her termination on November 14, 2002, at the call center for Illinois Bell Telephone in Rock Island, Illinois. At the pertinent time (in 2002), the call center had three levels of managerial employees: (1) about 20 first-level managers, most of them designated "coaches" but also including a Customer Process and Support Manager ("CPSM"), a Force Manager, and an Attendance

Manager; (2) two or three second-level managers, known as Senior Managers; and (3) one third-level manager, designated the General Manager, who was the top person within the consumer division at the Rock Island call center.

Beginning in 2001, Flaherty was a first-level manager, holding the Force Manager position. Her job responsibilities as Force Manager included (but were not limited to) oversight of clerical staff and enforcement of vacations, tours, and daily schedules. On October 22, 2002, she was moved to the CPSM position by Ryan Gunn, who had been General Manager only since September of 2002. Replacing her as Force Manager was Brad Fetters, a former Coach in Flaherty's area and a friend of Ryan Gunn's. Fetters then became Tech Manager in November of 2002.

Flaherty was considered a model employee. Her evaluations were uniformly positive, showing performance "above scale," meaning above average. There is no documentation of any problems with her performance until October 2002. More about those problems below.

One of the staff members who Flaherty (in her position as Force Manager) supervised was Lamont Johnson, a customer service representative who suffered from multiple sclerosis. Johnson[1] had been given an accommodation for his disability that

---

[1] Johnson has his own lawsuit pending in this district. See, Johnson v. Illinois Bell Telephone Co., Case No. 03-4088. He has survived summary judgment and is preparing for trial at this time. For purposes of the motion In this case, facts relating to Johnson that are relevant herein are recited as they were assumed by the Court to be in the dispositive motion Order in Johnson's case. Many of the facts about Johnson that Plaintiff included in her Statement of Facts, however, are wholly irrelevant to the issues in this case, and have been disregarded by the Court.

shortened his work day by one hour so that he worked 35 hours per week. He believed that daily hour to be a "flexible" hour that he could use as needed.

In addition, there were times when his illness interfered with his ability to work his scheduled hours or to arrive at work at the scheduled time. When that happened, Flaherty used what she (and other managers at her level) considered to be a discretionary authority and allowed him to make up that time at the end of his shift or on the weekend. Every week the hours he actually worked totaled 35 hours. Flaherty was not the only manager to flex Johnson's time in this manner. Other managers - predominantly male and including, Brad Fetters - also allowed Johnson to flex time that he missed, over and above the one hour accommodation, due to his illness. Based on her own and Johnson's understanding of his accommodation and on the practices of other managers with respect to flexing his time, Flaherty claims not to have seen any problem with what she was doing.

As was the general practice[2] among the customer service representatives, when hours were worked outside the normally scheduled day (such as flexed hours), those hours were coded "OT" on the time card. The "OT" did not mean they were claiming overtime pay; a computer program and the collective bargaining agreement determined whether overtime pay was due. In Johnson's case, overtime pay was not due because he was not working in excess of 40 hours per week, one of the prerequisites for such pay. Nonetheless, he did on several occasions receive a few hours of overtime pay.

---

[2]Although Gunn testified to the contrary, every other employee and supervisor asked about this matter testified as stated above. For purposes of this motion, the Court assumes that Plaintiff is correct.

Gunn learned about Flaherty's granting Johnson flex time in October of 2002 when Brad Fetters told him that he had seen Flaherty telling a subordinate to flex Johnson's time when he had not reported to work as scheduled. On or about October 17, Gunn began an investigation, reviewing documents and working with Human Resources and corporate security. Based on that investigation, Gunn concluded that Johnson was falsely reporting the hours he worked and that Flaherty was covering for Johnson's absences and tardies so that they did not appear in his time records.

Based on this conclusion Gunn removed Plaintiff from the Force Manager position on October 17, 2002, and thereafter began scrutinizing Johnson's attendance patterns. Flaherty was on vacation when Gunn told her via telephone of her reassignment to the CPSM position and of Fetters' appointment to the Force Manager position. Gunn did not tell her about the investigation; instead he told her that the change in positions was a strategic move to give her and Fetters more rounded experience within call center management. Flaherty told Gunn that they needed to talk about some problems with Fetters, but she gave no specifics until she returned to work.

Flaherty returned from her vacation on October 21, 2002. On that date, she complained to Gunn about Brad Fetters' sexual harassment of female employees including herself. Plaintiff had previously complained to Gunn[3] about Fetters' inappropriate interactions with female employees in the early months of 2001. At that time, she told

---

[3] Gunn testified that he did not recall this conversation, although he did not deny that it occurred. For purposes of this motion, Plaintiff's testimony about the conversation is assumed to be accurate.

Gunn that she was "sick and tired" of the way Fetters treated her and that she was to the point of considering filing a harassment suit against him.

Brad Fetters had a reputation with the women (and the men) in the workplace for his questionable conduct toward women. He called them demeaning names such as sweetie or honey, a habit of which Gunn was aware. When a woman came to him with a work-related issue, he was known to respond that he would "kiss it and make it better". When speaking to a woman, he frequently put his arm around her or touched her shoulder, and he generally behaved in a less than professional manner - admitting that he was "flirtatious" - toward female subordinates and peers alike. He also sent emails with sexual content at least once a week, and Gunn was on the recipient list for many of them.

One employee, Tannette Weitlauf, seemed to be a particular target. In addition to comments with sexual overtones, Fetters routinely snapped her bra straps (and, according to Weitlauf, did the same to other women), and when asked to stop replied that "you know you like it." There was also an incident involving Fetters reaching under Weitlauf's skirt on a stairway, accompanied by truly tasteless remarks. Weitlauf complained to her boyfriend, Steve Vance who was a Coach Manager. Vance went to Gunn. The two agreed that Vance should talk to Fetters. Exactly what was said during that conversation and what was reported back to Gunn and/or Weitlauf is disputed, but there is no dispute that Vance and Gunn discussed Fetters conduct. While the physical touching apparently stopped after Vance and Fetters talked, the inappropriate comments continued.

Plaintiff was discharged by Gunn on November 14, 2002. Gunn discharged Flaherty on November 14, 2002, explaining that he head concluded from her supervision of Johnson

that she was willing to "go around" the rules of the employer and that she had been falsifying Johnson's payroll/attendance records.

Johnson's employment was also terminated in December 2002.

Ultimately, more complaints about Fetters' conduct were made by female employees. In January 2003 Gunn gave Fetters a Final Warning and a suspension, based on a recommendation from Human Resources. An EEO investigation (triggered by an employee other than Plaintiff herein) resulted in the termination of Fetters' employment on February 24, 2003.

## DISCUSSION

HOSTILE ENVIRONMENT CLAIM

A claim of hostile work environment based on gender is one form of discrimination prohibited by Title VII. Meritor v. Vinson, 477 U.S. 57 (1986); Cooper Schut v. Visteon Auto. Sys., 361 F.3d 421, 426 (7th Cir. 2004). Such claims must be based on harassment so severe or pervasive that it can be said to have altered the terms and conditions of the victim's employment. Id. at 67. The word "harassment" "encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile or offensive working environment." McKenzie v. Ill. Dept of Transp., 92 F.3d 473, 479 (7th Cir. 1996).

The hostility must rise to a sufficiently severe level, such that a reasonable person would find it hostile; in addition, the victim herself must have perceived the conduct as hostile or offensive. Wolf v. Northwest Indiana Symphony Society, 250 F.3d 1136, 1143 (7th Cir. 2001).

Because only an employer can be liable under Title VII, it is also important to consider whether the harasser was the victim's supervisor or simply a co-worker. An employer may be liable for a hostile environment created by a non-supervisor employee if and only if the employer was negligent either in discovering or in remedying the harassment. Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 505-06 (7th Cir. 2004). In other words, an employer is liable for a hostile environment where the employer "knows or should have known of the conduct and fails to take immediate and appropriate corrective action". 29 C.F.R. § 1604.11(e); Berry v. Delta Airlines, Inc., 260 F.3d 803 (7th Cir. 2001). Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1032 (7th Cir. 1998).

In order to state a hostile environment claim, a plaintiff must demonstrate: (1) she was subjected to unwelcome harassment; (2) the harassment was based on the plaintiff's sex; (3) the harassment was sufficiently severe or pervasive to alter the condition of plaintiff's work environment and to create a hostile or abusive working environment; and (4) there is a basis for employer liability. Schut, 361 F.3d at 426.

Determining what precisely constitutes a hostile work environment is not an exact science. The court is to consider the totality of the circumstances, looking at such factors as the frequency of the conduct, its severity, its nature (i.e. was it physical or verbal? did it threaten or humiliate or was it simply obscene or offensive speech?), and the extent to which it unreasonably interfered with job performance. Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993). See also, Gentry v. Export Pkg. Co., 238 F.3d 842, 850 (7th Cir. 2001). Another factor that may enter into the analysis is "second hand harassment," or harassment directed at someone other than the plaintiff. See, Smith v. Northeastern Illinois Univ., 388 F.3d 559, 567 (7th Cir. 2004).

The Supreme Court has instructed that a workplace is hostile where it is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. "The occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable." Hilt-Dyson v. Chicago, 282 F.3d 456, 463 (7th Cir. 2002). Similarly, as the egregiousness of the conduct decreases, the more frequent the conduct must have occurred in order to be actionable. See, Savino v. CP.Hall Co., 199 F.3d 925, 933 (7th Cir. 1999).

Two questions arise from this discussion of the applicable law. The first one is whether there is a basis for holding this employer liable. Gunn has claimed a lack of knowledge about Fetters' conduct. At best, his denial creates a question of fact. First, Gunn was Fetter's supervisor. Everyone else in the workplace knew of Fetters' reputation, and Gunn actually did know about Fetters' use of pet names for the women at the call center and about the sexually-charged emails. His claim of ignorance is contradicted by some evidence and is highly unbelievable with respect to the rest. Second, Gunn was Fetter's friend, so he had to have been aware of his personality and character. And third, at least one or two of the women had made complaints that were relayed in one way or another to Gunn. Moreover, it was only February 2003 when Fetters himself was fired by Gunn following additional accusations of sexual harassment. Gunn acknowledged in his deposition that the Weitlauf incident formed a partial basis for that termination. Whether Gunn should be held to constructive knowledge (which would be attributable to the defendant because of Gunn's position) is at best a disputed, material fact.

However, the second question that arises is whether plaintiff was subjected to any sort of harassment based on her gender. The investigation that resulted in plaintiff's reassignment, suspension and ultimate termination was triggered by Fetters' report to Gunn about how Flaherty was flexing Johnson's time. That had nothing to do with her gender. Conduct directed at other employees may be evidence of severity or pervasiveness, but such evidence does not relieve the Plaintiff of her obligation to produce evidence of gender-based harassment that was directed at her. I conclude that Plaintiff lacks evidence of harassment based on her gender.

Even if that element were conceded, however, I also conclude that the evidence falls far short of meeting the "severe or pervasive" requirement. There is no evidence that Plaintiff herself was ever physically threatened or that any of the conduct directed at her was physical. Only one person - Brad Fetters - perpetrated any direct gender-based conduct, and it was not sufficiently frequent to be characterized as "pervasive." While Fetters' boorish conduct was overt, it was primarily directed at other women, not Flaherty. And his conduct was primarily verbal. The only evidence of physical misconduct is an isolated incident directed at another woman of which Plaintiff was unaware at the time.

Objectively, it simply cannot be said that this workplace was permeated with hostile or intimidating conduct. And the fact that Plaintiff's two complaints about Fetters were made more than a year and a half apart speaks volumes about how she subjectively viewed her workplace. It would be wholly unreasonable to conclude from the evidence that the workplace was either objectively or subjectively intolerable. I therefore conclude that the evidence in this case of gender harassment was not sufficiently severe or pervasive to

alter the conditions of Plaintiff's work environment or to create a hostile or abusive working environment for her.

TITLE VII DISCRIMINATION

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-03 (1973), a plaintiff claiming discrimination[4] on the basis of sex must establish the elements of a prima facie case, namely that (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees not in the protected class. Logan v. Caterpillar Inc., 246 F.3d 912, 919 (7th Cir. 2001).

Once a plaintiff establishes the prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. The burden then shifts back to the plaintiff to show that the articulated reason is merely pretext for discrimination. McDonnell Douglas, supra. See, Logan, 246 F.3d at 919.

For purposes of this motion, defendant appears to concede that there is evidence to support elements (1), (2) and (3) of the prima facie case. Defendant argues that Plaintiff has failed to produce evidence in support of her claim that similarly situated male employees[5] were treated differently than she was.

---

[4] A claim of discrimination under Title VII may be established by either the direct or the indirect method. Plaintiff has only asserted the indirect method, which is governed by McDonnell Douglas.

[5] Plaintiff includes a plethora of information about other female employees. The law is clear that the employees with whom Plaintiff must be compared are employees not in the protected class. See, e.g., Sartor v. Spherion Corp., 388 F.3d 275, 279 (7th Cir. 2004). The information about female employees is not therefore relevant to the analysis of this element of her claim.

In cases such as this one, where the Plaintiff claims that she was disciplined more harshly than others, the Plaintiff must compare herself to employees whose qualifications, performance, and conduct were similar to hers, showing that the other employees engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Peele v. Country Mutual Ins. Co., 288 F.3d 319, 330 (7th Cir. 2002).  See also, Radue v. Kimberly Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000).  Additionally, Plaintiff must show that the same decision maker was involved in imposing the discipline in question.  Id. at 617-18; Buie v. Quad/Graphics, Inc., 366 F.3d 496, 508 (7th Cir. 2004).

In this case, the Plaintiff has produced evidence that other male managers at her level flexed time for Johnson but were not disciplined at all.  Defendant argues that none of these managers "falsified business records" or "improperly manipulat[ed] a service representative's schedule so as to mask his absences and tardiness."  That is simply defendant's characterization of the conduct that Plaintiff describes as performing one of her discretionary job duties.

Defendant as the moving party has not met its burden of showing, as a matter of law, that there was no differential treatment of similarly situated employees. I conclude that Plaintiff has met burden of producing some evidence in support of this element of her prima facie case.

Because that is the only disputed element of the prima facie case (at least for purposes of this motion), the burden next shifts to the Plaintiff to show that the employer's articulated reason for terminating her employment was a  pretext for discrimination.  This Court is not to sit as "super-personnel department" to examine business decisions for

propriety. Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). There must be some evidence that the articulated reason is a lie, a phony reason, or that it completely lacks a factual basis. Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 (7th Cir. 1998). Russell v. Acme Evans Co., 51 F.3d 64, 68 (7th Cir. 1995); Jordan v. Sommers, 205 F.3d 337, 343 (7th Cir. 2000). To meet this burden, plaintiff must produce "significantly probative admissible evidence" from which it could be inferred that the employer's reason was false and that the actual reason was discriminatory. Jones v. Union Pacific RR Co., 302 F.3d 735 (7th Cir. 2002); King v. Preferred Technical Group, 166 F.3d 887, 892-93 (7th Cir.1999). Pretext may be inferred from the employer's untruthfulness, and evidence that calls truthfulness into question precludes summary judgment. Perdomo v. Browner, 67 F.3d 140, 145 (7th Cir. 1995). Inconsistent or contradictory explanations for the employment action may place the employer's explanation in doubt, thereby precluding summary judgment. O'Neal v. New Albany, 293 F.3d 998, 1005-06 (7th Cir. 2002).

There is no evidence in this record that the employer has offered inconsistent explanations or has lied about the reason for its action. From the outset, the only explanation given by the employer (or by Gunn) is that Plaintiff's termination was a result of her handling of Johnson's time. It may very well be that Gunn drew the wrong conclusion about Flaherty's conduct, but that goes nowhere in proof of pretext. And there is a basis in fact for Gunn's conclusion: Flaherty has never denied that she flexed Johnson's time and documented the flexed time in a manner Gunn found objectionable. And even if the explanation is somehow called into question, Plaintiff has utterly failed to produce any evidence that the real reason for her termination was her gender. In fact, the

timing of her removal from the position as Force Manager occurred before she made her second complaint about Fetters, thereby belying the argument that gender somehow played a role in Gunn's decision. I therefore conclude that Plaintiff has failed to show evidence of pretext.

For any one of these reasons, I find that the defendant has shown that there are no material disputes of fact and that it is entitled to summary judgment as a matter of law as to the sex discrimination claim. The motion is therefore allowed to that extent.

## TITLE VII RETALIATION

For retaliation claims under Title VII, the Plaintiff must show that (1) she engaged in activity protected by Title VII; (2) the plaintiff was performing her job according to her employer's legitimate expectations; (3) the plaintiff suffered an adverse action; and (4) the plaintiff was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. See, Logan, 246 F.3d at 919; Moser v. Indiana Dept. of Corrections, 406 F.3d 895, 940-05 (7th Cir. 2005). If a prima facie case is established, then the McDonnell Douglas burden-shifting analysis comes into play.

Defendant disputes whether Plaintiff has produced evidence of the fourth element, and disputes whether Plaintiff has shown pretext. As discussed above, Plaintiff's evidence of less favorable treatment creates a question of fact, but her claim fails on pretext. Especially considering the timing of Gunn's investigation and his transfer of Flaherty from the Force Manager position, it simply cannot be said that retaliation for her complaints about Fetters' treatment of women reveal pretext of any kind relating to gender.

For that reason, I find that the defendant has shown that there are no material disputes of fact and that it is entitled to summary judgment as a matter of law. To that extent, the motion for summary judgment is granted.

## ADA RETALIATION

The ADA prohibits discrimination against an individual who has "opposed any act or practice made unlawful by this chapter or... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter." 42 U.S.C. §12203(a). It is also unlawful to "interfere with any individual ... on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of any right granted or protected by this chapter." 42 U.S.C. §12203(b). As in Title VII claims, an ADA plaintiff may proceed under either the direct or the indirect method of proof.

Here there is some direct evidence, in the form of testimony about comments made by Gunn during his investigation of Flaherty and Johnson. Although those comments were directed at Johnson and suggested that Gunn wanted to get rid of Johnson, the scope of the investigation included Johnson and the comments could reasonably be interpreted as reflecting Gunn's attitude towards her as well. There is also (extraordinarily weak) testimony about some kind of list that Gunn created that may or may not have been a list of employees with disabilities who were somehow being targeted by Gunn. Although the weight of this evidence is not substantial, it is enough to survive summary judgment.

In addition, the parties analyze this claim under the familiar burden-shifting analysis. The plaintiff must first present a prima facie case, showing that she engaged in statutorily protected conduct, after which she and no other similarly situated employee who did not engage in such conduct was subjected to an adverse employment action, even though she

16

was performing her job in a satisfactory manner.  See, Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1117 (7th Cir. 2001); Stone v. Indianapolis Pub. Util. Div., 281 F.3d 640, 644 (7th Cir. 2002).  Protected activity under the ADA requires action taken in good faith and with a reasonable and sincere belief that she was opposing unlawful discrimination or otherwise aiding a protected individual in the exercise of his rights under the ADA.  See, Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1096 (7th Cir. 1998).

There is no evidence suggesting that Flaherty's actions on Johnson's behalf were taken with anything other than such a good faith belief.  Whether to characterize those actions as reasonable is a question of fact that cannot be resolved at this stage.  Suffice it to say that Plaintiff has produced significant evidence that the actions that formed the basis for her discharge were taken in order to assist Johnson in the exercise of rights afforded him by the ADA.

Defendant continues to ignore the fact that managers other than Flaherty were involved in flexing time for Johnson.  No explanation has been offered with respect to the treatment of these managers as compared to Flaherty.

Plaintiff has also presented information about other managers and employees who violated the Code of Conduct in ways different from Flaherty but who were not disciplined at all or were disciplined less harshly than Flaherty.  To the extent that this information relates to non-managerial employees, they are not as a matter of law sufficiently similar to Plaintiff for this purpose.  To the extent that they were managers, defendant is free at trial to challenge on an individual basis whether or not their alleged misconduct was similar to Plaintiffs.  That has not been done in this motion.

The parties also dispute whether Flaherty was meeting the employer's legitimate expectations. The evidence is sufficient to survive summary judgment. First, her employment history consisted of 17 years of only positive evaluations, along with regular raises and promotions. Second, as defendant characterizes Flaherty's conduct as "falsifying documents." That is not a "fact" but an opinion about a fact. What Flaherty did is not disputed. How that action should be characterized is disputed, and is therefore a question for a jury.

In addition, I find that in the context of the ADA claim, the evidence is sufficient to create a question of fact as to pretext. There is definitely a connection between Plaintiff's discharge and her conduct vis-v-vis Johnson. Whether that connection rises to the requisite level is a question for a fact finder.

I therefore conclude that defendant has failed to meet its burden under Rule 56. Its motion for summary judgment as to the retaliation claim under the ADA is therefore denied.

## CONCLUSION

For these reasons, the defendant's motion for summary judgment [#17] is GRANTED in part, as to the Title VII claims, and is DENIED in part, as to the ADA retaliation claim.

ENTER this 7th day of September 2005.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE